IN THE MATTER OF: THE APPEAL OF MOUNT SHEPHERD METHODIST CAMP FROM THE DENIAL OF AN APPLICATION FOR EXEMPTION BY THE RANDOLPH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1993

No. COA94-1329

(Filed 3 October 1995)

**1. Taxation § 66 (NCI4th)— camp operated for religious purposes—sufficiency of evidence**

The evidence was sufficient to support the Property Tax Commission's findings that a camp operated by taxpayer was "religious" and that its operation demonstrated and furthered the beliefs and objectives of the Methodist Church where there was substantial evidence that the primary purpose of the camp was to serve the religious and spiritual needs of the members of the Methodist Church; the fact that others were permitted to use the camp and that some were charged a fee was not determinative, as the fee was small and there was no evidence that there was any effort by the camp to make a profit; and the sale of timber on a portion of the larger tract was not a basis for converting the entire tract into a commercial venture. N.C.G.S. § 105-278.3.

**2. Taxation § 66 (NCI4th)— unimproved part of camp—use to further religious practices—unimproved land properly exempted**

The Property Tax Commission did not err as a matter of law in refusing to conclude that only land where improvements were located, approximately twenty-three acres, was entitled to exemption under N.C.G.S. § 105-278.3 and in concluding that most of the 532-acre contiguous tract was exempt where there was substantial competent evidence that the property exempted by the Commission, where there were no improvements, was an integral part of taxpayer's religious camp and provided campers opportunities to further their religious practice.

**Am Jur 2d, State and Local Taxation § 381.**

**What constitutes church, religious society, or institution exempt from property tax under state constitutional or statutory provisions. 28 ALR4th 344.**

Appeal by Randolph County from Final Decision entered by the Property Tax Commission on 17 June 1994. Heard in the Court of Appeals 1 September 1995.

IN RE APPEAL OF MOUNT SHEPHERD METHODIST CAMP

[120 N.C. App. 388 (1995)]

*Morgan, Herring, Morgan, Green, Rosenblutt & Gill, by James F. Morgan and David K. Rosenblutt, for appellee Mount Shepherd Methodist Camp.*

*Gavin, Cox, Pugh, Gavin & Gavin, by Richard L. Cox and Alan V. Pugh, for appellant Randolph County.*

GREENE, Judge.

Randolph County (the County), appeals from an order entered 17 June 1994 by the Property Tax Commission (the Commission), which modified the decision of the Randolph County Board of Equalization and Review (the Board). The order of the Commission permitted the High Point District of the United Methodist Church (Taxpayer), who owns and operates a camp known as the Mount Shepherd Methodist Camp (Camp), to claim an ad valorem tax exemption larger than that permitted by the County.

The undisputed facts reveal that the Taxpayer owns a contiguous tract of land in Randolph County containing approximately 532 acres. Located on 23.1 acres of this land are a number of structures and other real property improvements, including cabins, bathhouses, recreational vehicle sites, camping areas, a petting zoo, ballfields, picnic shelters, parking lots, a chapel and a lodge. There are approximately seven miles of trails passing throughout the property. One acre of the land is leased to the State of North Carolina. The timber on twenty-four acres of the land was recently cut and sold. The structures, property improvements and trails are used by the Taxpayer in connection with the operation of the Camp. The Camp is open to different groups (adult and child) including the Methodist Church, public schools, scouts and other churches. In some instances there is a small fee ($5.00 per person per night or $1.50 per person per day) charged for the use of the facilities. The activities conducted at the Camp vary depending on the group but include religious worship, meditation, camping, hiking, swimming, fishing, pond studies, counseling, canoeing, pottery classes, baseball/softball, environmental studies and picnicking.

The Taxpayer claimed that all 532 acres were exempt under N.C. Gen. Stat. § 105-278.4. The Board found that only 21.1 acres was exempt property. Pursuant to N.C. Gen. Stat. § 105-290, Taxpayer appealed the Board's decision, filing its notice of appeal and application for hearing before the full Commission. The Commission found as a fact that "[t]he Camp is a religious camp" and its operation "is an

activity that demonstrates and furthers the beliefs and objectives of the Methodist Church." The Commission then concluded that all the property was used for "religious purposes" except "the one acre and improvements . . . leased to the State of North Carolina," "[t]he twenty-four (24) acres used by the Taxpayer for the commercial production of timber," and "[t]he northeast portion of the subject property, which contains no structures or improvements, and no trails except a seldom used perimeter trail . . . ."

The issues are whether the order of the Commission is (I) supported "by competent, material and substantial evidence in view of the entire record," and (II) affected by an error of law.

This Court's review of the Commission is governed by N.C. Gen. Stat. § 105-345.2(b) which provides in pertinent part that we may affirm, reverse, modify, remand or declare null and void the order of the Commission

if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 105-345.2 (1992). Review is further limited to the exceptions and assignments of error set forth to the order of the Commission and arguments presented in the briefs to this Court. N.C. R. App. P. 10(a) ("review . . . is confined to a consideration of those assignments of error set out in the record on appeal"); N.C. R. App. P. 28(a) ("[r]eview is limited to questions so presented in the several briefs"); cf. Watson v. N.C. Real Estate Comm'n, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296, (1987), cert. denied, 321 N.C. 746, 365 S.E.2d 296 (1988). In this case the County questions the sufficiency of the evidence to support several of the Commission's findings and argues

that the Commission erred in its application of the law. We therefore address only those issues.

I

**[1]** The County argues that the evidence does not support the findings that the Camp is "religious" and that its operation "demonstrates and furthers the beliefs and objectives of the Methodist Church." In reviewing these findings we must look to the whole record, N.C.G.S. § 105-345.2(c) (1992), and determine "whether there was substantial evidence in view of the entire record as submitted" to support the findings. *See Lackey v. Dept. of Human Resources*, 306 N.C. 231, 237-38, 293 S.E.2d 171, 176 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 238, 293 S.E.2d at 176.

The County argues the evidence that the Camp charges some of the campers a fee, sold some timber off a portion of the property, and allows the facilities to be used by non-church groups precludes a finding that it is a "religious camp" operated to "further the beliefs . . . of the Methodist Church." We disagree. There is substantial evidence in this record that the primary purpose of the Camp was to serve the religious and spiritual needs of the members of the Methodist Church. The fact that others were permitted to use the Camp and that some were charged a fee is not determinative. *See In re Appeal of Worley*, 93 N.C. App. 191, 196, 377 S.E.2d 270, 273-74 (1989) (exemption allowed where church allowed the community to use the property for recreational purposes). The fee was small and there is no evidence that there was any effort by the Camp to make a profit. Furthermore, the sale of the timber on a portion of the larger tract is not a basis for converting the entire tract into a commercial venture. The Commission correctly refused to exempt the twenty-four acres from which the timber was sold.

II

**[2]** The County next argues that the Commission erred as a matter of law in refusing to conclude that only the land where the improvements are located (approximately twenty-three acres) is entitled to exemption. We disagree.

Exempt property pursuant to N.C. Gen. Stat. § 105-278.3 includes not only buildings and the land the buildings occupy, but also any "adjacent land reasonably necessary for the convenient use of any such building[s]." N.C.G.S. § 105-278.3(a) (1992). The Commission therefore did not err as a matter of law in concluding that the natural

areas of the Camp, where no improvements were located, were properly within the scope of section 105-278.3.

Our review of the record also reveals that there was substantial competent evidence that the property exempted by the Commission, where there were no improvements, was an integral part of the Camp and provided campers opportunities to further their religious practice. N.C.G.S. § 105-278.3(d)(1) (1992) ("religious purpose includes any activity "that demonstrate[s] and further[s] the beliefs and objectives of a given church"). Worship, meditation and Bible studies are conducted throughout the camp. Environmental classes teaching Christian stewardship of the outdoors are taught in wilderness areas. Adults and supervised children are allowed to travel throughout the camp uninhibited to learn about the outdoors and undergo self-discovery. Furthermore, the undeveloped natural areas of the property serve as a buffer zone to screen the Camp from surrounding development, contributing to the sanctity and serenity of the Camp and thus qualifying its use for a "religious purpose." *See Worley* at 197, 377 S.E.2d at 274.

The County also argues that it was prejudiced by the lack of the Taxpayer's pre-hearing order, as required by 17 NCAC 11 .0214 (1984), and therefore, the Commission should have dismissed the Taxpayer's appeal. We fail to see how the County was prejudiced. The County had ample opportunity to cross-examine Taxpayer's key and only witness, as well as examine and use any and all of Taxpayer's exhibits put before the Commission. This assignment of error is overruled. Finally we do not address the County's argument that the Commission erred in denying its motion to dismiss made at the close of the Taxpayer's evidence. The County fails to cite any authority in support of this argument and therefore this assignment of error is deemed abandoned. *Byrne v. Bordeaux*, 85 N.C. App. 262, 265, 354 S.E.2d 277, 279 (1987); N.C. R. App. P. 28(b)(5).

Affirmed.

Judges WYNN and MARTIN, John C., concur.