LAURA LEIGH BOONE (STOTT) BROMHAL v. E. GREGORY STOTT

No. 9310DC611

(Filed 6 September 1994)

**1. Divorce and Separation § 408 (NCI4th); Accord and Satisfaction § 8 (NCI4th)— child support payments offered— checks accepted and cashed—no accord and satisfaction of child support claim**

The trial court did not err in finding and concluding that defendant's tendering of checks and plaintiff's endorsement and negotiation of same did not constitute an accord and satisfaction with respect to child support, since there was no evidence of an agreement between the parties, nor of consideration passing between them.

**Am Jur 2d, Accord and Satisfaction §§ 18-23, 44; Divorce and Separation §§ 1037, 1038.**

**2. Divorce and Separation § 547 (NCI4th)— provision in separation agreement for attorney's fees—award proper**

The trial court did not err in awarding attorney's fees to plaintiff in an action to enforce the child support provision of a separation and property settlement agreement where the agreement provided for the recovery of attorney's fees in an action to enforce provisions of the agreement.

**Am Jur 2d, Divorce and Separation §§ 586 et seq., 829.**

Judge GREENE concurring in part and dissenting in part.

Appeal by defendant from judgment entered 3 November 1992 by Judge O. Henry Willis, Jr. in Wake County District Court. Heard in the Court of Appeals 7 March 1994.

*Brady, Schilawski, Earls and Ingram, by Michael F. Schilawski, for plaintiff-appellee.*

*Jack P. Gulley for defendant-appellant.*

WYNN, Judge.

The parties were married to each other on 23 April 1977 and separated on or about 17 August 1987. Two minor children were born to

**BROMHAL v. STOTT**

[116 N.C. App. 250 (1994)]

the parties during the marriage. On 27 August 1987 the parties executed a separation agreement and property settlement. Paragraph 23 of the separation agreement provides:

> [H]usband will pay the sum of $175 per week as child support pending the sale of the marital home. . . . After the aforesaid sale is consummated and the funds therefrom disbursed, the parties agree to renegotiate the amount of child support to be contributed by husband; however, husband agrees that such support payment will not be less than twenty-five (25%) percent of his adjusted gross income.

On 25 November 1987, the parties executed a modification agreement to the 27 August separation agreement. It provided that defendant would purchase plaintiff's interest in the marital home and that upon plaintiff's vacation of the house, "[h]usband shall thereafter be required to begin making child support payments in accordance with the provisions for computing such payments detailed in paragraph 23 of the parties Separation Agreement dated 25 August 1987."

Defendant did purchase plaintiff's interest in the home and plaintiff and the children vacated it in August 1988. Defendant reoccupied the home but never increased the amount of child support payments, even though the $175 per week he was paying was less than 25% of his income.

On 28 December 1988, plaintiff filed a complaint for specific performance of the separation agreement and modification agreement. An amended complaint was filed on 13 June 1989. Plaintiff asked for an order requiring defendant to pay child support in an amount not less than 25% of his gross monthly income since 1 August 1988 and continuing thereafter. Plaintiff also requested attorney's fees and reimbursement of expenses pursuant to the paragraph of the separation agreement providing:

> Suit costs. If either party shall fail to keep and perform any agreement or provision hereof, the other party shall be entitled to recover reasonable attorney's fees and any and all other expenses incurred in any action instituted to enforce provisions of this agreement.

The parties entered into a stipulation agreement on 27 September 1989, which recited, among other things, that the parties agree that the separation agreement is valid and enforceable; that a district court judge may review the agreement and determine all matters in

controversy between the parties based on it; and that the modification agreement is valid and enforceable and "shall be reviewed and interpreted according to its terms and the intent of the parties."

Plaintiff moved for summary judgment on 6 December 1989. On 17 January 1990, Judge Jerry Leonard granted partial summary judgment for plaintiff, finding that, pursuant to the parties' stipulation agreement, the Separation Agreement and Modification Agreement are valid and enforceable; beginning at the time of sale or transfer of the marital residence, defendant was required to provide child support payments of "not less than twenty-five (25%) percent of his adjusted gross income"; defendant is obligated under the agreements to provide medical insurance and costs in excess of coverage; and "in any and all other respects Defendant's liability pursuant to the terms of the existing Agreements is established." Summary judgment was partial because, although plaintiff won summary judgment as to defendant's liability, the question of damages was reserved for later hearing.

Subsequent to Judge Leonard's 17 January 1990 order, plaintiff filed a separate and independent lawsuit pursuant to Chapter 50 of the North Carolina General Statutes, seeking, among other things, court-ordered child support. By special commission, Judge Lowry M. Betts heard the case on 11 April 1990 and, on 28 January 1991, issued a child support order requiring defendant to pay plaintiff $598.73 per month.

When the specific performance case next arose for hearing in the trial court, Judge O. Henry Willis, Jr. determined that due to the entry of Judge Betts's child support order, plaintiff "elected her remedy" when she pursued the child support action. The court granted summary judgment for defendant, determining that plaintiff's claim for specific performance of the child support provision of the separation agreement would terminate as of the date of entry of Judge Betts's order and that plaintiff's specific performance case should be repleaded "in the nature of a contract action." In other words, plaintiff's claim for child support was limited by summary judgment to a claim for arrearages in child support, among other things, accrued during the time from the date of activation of payments pursuant to the separation agreements to the date child support payments were ordered by the court. This order was entered 10 October 1991.

On 15 and 16 October 1992, Judge Willis heard the contract case. Judgment was announced in open court on 16 October 1992 and

entered on 3 November 1992. Plaintiff was awarded $22,550.49, plus interest, for unpaid child support and reimbursement for one additional marital debt, and defendant was ordered to compensate plaintiff for attorney's fees incurred at all stages of the case in the amount of $40,000. Defendant appeals this judgment.

We dispose of defendant's first four arguments without addressing them because the orders from which they arise were not designated in his notice of appeal. Defendant's first four arguments deal with previous rulings by the court: an award of attorney's fees to plaintiff and denial of attorney's fees to defendant on an earlier motion in the cause; the court's partial summary judgment ruling of 17 January 1990; and the court's denial of defendant's summary judgment motion of 10 October 1991 and subsequent denials of defendant's renewed motions for summary judgment on the issue of accord and satisfaction. There are two notices of appeal in the record. Both designate appeal from Judge Willis's judgment. One was filed on 28 October 1992, following the oral entry of judgment; the other was filed on 20 November 1992, following written entry of judgment. The notices clearly and exclusively recite that notice of appeal is given only as to that judgment. Rule 3(a) of the North Carolina Rules of Appellate Procedure requires that a notice of appeal "must designate the judgment or order from which appeal is taken." Without proper notice of appeal, the appellate court acquires no jurisdiction and neither the court nor the parties may waive the jurisdictional requirements even for good cause shown under Rule 2. *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 392 S.E.2d 422 (1990); *Brooks, Comm'r of Labor v. Gooden*, 69 N.C. App. 701, 318 S.E.2d 348 (1984). Due to a lack of jurisdiction, then, we do not address defendant's first four issues.

In addition, defendant abandoned several of his arguments by failing to brief them or failing to cite any authority supporting them pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure, which provides, "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned. The body of the argument shall contain citations of the authorities upon which the appellant relies." *See also Byrne v. Bordeaux*, 85 N.C. App. 262, 354 S.E.2d 277 (1987).

[1] We are left with the following assignments of error. First, defendant assigns error to the trial court's finding of fact and conclusion of

law that defendant's tendering of checks "and Plaintiff's endorsement and negotiation of same did not constitute an accord and satisfaction with respect to child support." Defendant argues that plaintiff is precluded from recovering arrearages because her endorsement and negotiation of defendant's checks constitutes an accord and satisfaction.

"Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement." 1 Strong's North Carolina Index 4th, Accord & Satisfaction § 1 (1990). In order for accord and satisfaction to be a successful defense, there must have been a negotiation or agreement between the parties concerning payment or acceptance of less than the full amount owed. *Fruit & Produce Packaging Co. v. Stepp*, 15 N.C. App. 64, 189 S.E.2d 536 (1972). This agreement must be supported by consideration. *Baillie Lumber Co. v. Kincaid Carolina Corp.*, 4 N.C. App. 342, 167 S.E.2d 85 (1969). There is no evidence on the record of an agreement between the parties nor of consideration passing between them. We thus find the accord and satisfaction defense inapplicable here and affirm the trial court's finding of fact.

[2]   Finally, defendant appeals the trial court's award of attorney's fees to plaintiff, granted under the clause in the separation agreement providing:

> Suit costs. If either party shall fail to keep and perform any agreement or provision hereof, the other party shall be entitled to recover reasonable attorney's fees and any and all other expenses incurred in any action instituted to enforce provisions of this agreement.

In *Edwards v. Edwards*, 102 N.C. App. 706, 403 S.E.2d 530, *disc. rev. denied*, 329 N.C. 787, 408 S.E.2d 518 (1991), this Court upheld similar language in a separation agreement which indemnified the non-defaulting party. This Court ruled that under N.C. Gen. Stat. § 52-10.1, "separation agreements are 'binding in all respects' so long as they are 'not inconsistent with public policy.' " *Edwards*, 102 N.C. App. at 713, 403 S.E.2d at 530. This Court concluded that there is "nothing inconsistent with public policy in the . . . indemnity clause, and the agreement was executed pursuant to the statute." *Id.*

In *Carter v. Foster*, 103 N.C. App. 110, 404 S.E.2d 484 (1991), this Court concluded that "parties may, in settling disputes, agree to the

payment of attorney's fees." *Carter*, 103 N.C. App. at 115, 404 S.E.2d at 488. In the instant case, the "Separation Agreement and Property Settlement Agreement" entered into by the parties recites that "unfortunate differences" arose between them and that it was in the "best interest" of each to enter into the agreement. Included among the provisions were waivers by each of "any and all . . . rights arising out of the marriage relationship, in and to any and all property now owned" by the other, of "any claim against the other for the rights of 'Equitable Distribution,' " of "all claims and demands against the other for support, maintenance and alimony," and of "any [prior] conduct which may have constituted a basis for any legal claim by either party against the other." In addition, the agreement contained a "mutual release" by each party "from all causes of action, claims, rights, or demands whatsoever, in law or equity, which either . . . had or has against the other," save for absolute divorce. This language clearly constitutes an "agreement settling all . . . claims," *Carter*, 103 N.C. App. at 115, 404 S.E.2d at 488, between the parties. As in *Carter*, such settlement agreements may include provisions for attorney's fees. Accordingly, this assignment of error is overruled.

The order of the trial court is therefore

Affirmed.

Judge JOHN concurs.

Judge GREENE concurring in part and dissenting in part with separate opinion.

Judge GREENE concurring in part and dissenting in part.

I disagree only with that part of the majority's opinion affirming the trial court's award of attorneys' fees, granted under a provision in the separation agreement. Public policy may very well favor allowing contractual provisions for indemnification of attorneys' fees. *See Stuart M. Speiser, Attorneys' Fees*, ch. 15 §§ 15:3-15:8 (1973 & Supp. 1993) (discussing competing public policy arguments for and against allowing such provisions). Nonetheless, our Supreme Court has spoken directly to this issue and restated the well-established rule in North Carolina that "[e]ven in the face of a carefully drafted contractual provision indemnifying a party for such attorneys' fees as may be necessitated by a successful action on the contract itself, our courts have *consistently refused to sustain such an award absent statutory*

**BROMHAL v. STOTT**

[116 N.C. App. 250 (1994)]

authority therefor." *Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980). In the face of this unequivocal holding of our Supreme Court, this Court in *Edwards*, without any citation to *Stillwell*, upheld an award for attorneys' fees granted pursuant to a separation agreement even though there was no statutory authorization for such an award. *Edwards v. Edwards*, 102 N.C. App. 706, 403 S.E.2d 530, *disc. rev. denied*, 329 N.C. 787, 408 S.E.2d 518 (1991). In addition, this Court in *Carter*, without any attempt to apply or interpret *Stillwell*, approved parties' contracting for the payment of attorneys' fees. *Carter v. Foster*, 103 N.C. App. 110, 404 S.E.2d 484 (1991). I am aware that panels of this Court are bound by prior decisions of this Court, *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), but I do not believe that this rule applies when the prior decisions of this Court do not apply or purport to interpret a previous Supreme Court opinion clearly requiring a contrary result. In this event, this Court has "the responsibility to follow [Supreme Court] decisions 'until otherwise ordered by the Supreme Court'." *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993).[1] This principle is supported by federal cases, including *County of Monroe, Florida v. U.S. Dep't of Labor*, 690 F.2d 1359 (11th Cir. 1982), which is cited by our Supreme Court in *Civil Penalty*.

In *Monroe County*, the Eleventh Circuit recognizes that the general rule is "a three-judge panel may not disregard precedent set by a prior panel absent an intervening Supreme Court decision or *en banc* circuit decision." *Id.* at 1363. When, however, a decision set by a prior panel does not apply or purport to interpret an earlier controlling Supreme Court decision, the general rule does not apply because a panel is "without power to disregard" an earlier controlling Supreme Court decision. *Id.*; *Wilson v. Taylor*, 658 F.2d 1021 (5th Cir. 1981).

Accordingly, because *Edwards* and *Carter* did not apply or purport to interpret *Stillwell* and because *Stillwell* is unambiguous in its holding and remains the law of this State, this Court is bound to follow *Stillwell*, not *Edwards* or *Carter*. I would therefore reverse the trial court's enforcement of the attorneys' fees provision in the parties' separation agreement.

---

1. The fact that our Supreme Court denied discretionary review in the *Edwards* case does not mean that our Supreme Court "has determined that the decision of the Court of Appeals is correct." *Peaseley v. Coke Co.*, 282 N.C. 585, 592, 194 S.E.2d 133, 139 (1973).